SCHMIDT CONSTRUCTION COMPANY; Front Range Interior Construction Company, Inc.; and Adarand Constructors, Inc., Plaintiffs–Appellants,

v.

Douglas E. FAST; Mary M. Fast; Jack Duston; Duston Construction Inc.; Remad Development Inc. d/b/a Remad, Inc.; Colorado National Bank Exchange; Esther Rinard, Public Trustee of El Paso County; Power Motive Corporation; Cherry Creek National Bank; Astrozon Investors No. Two; City of Colorado Springs; Castle Concrete Company; L & W Supply Corporation d/b/a Building Specialties, Inc.; Colorado Springs Supply Company; and Ideal Insulation, Inc., Defendants–Appellees.

SCHMIDT CONSTRUCTION COMPANY; Front Range Interior Construction Company, Inc.; and Adarand Constructors, Inc., Plaintiffs–Appellees,

v.

CASTLE CONCRETE COMPANY, Defendant–Appellant,

and

Douglas E. Fast; Mary M. Fast; Jack Duston Construction, Inc.; Remad Development Inc., d/b/a Remad Inc.; Colorado National Bank Exchange; Esther Rinard, Public Trustee of El Paso County; Power Motive Corporation; Cherry Creek National Bank; Astrozon Investors No. Two; City of Colorado Springs; L & W Supply Corporation, d/b/a Building Specialties, Inc.; Colorado Springs Supply Company; and Ideal Insulation, Inc., Defendants–Appellees.

Nos. 87CA0753, 87CA0827.

Colorado Court of Appeals, Div. IV.

June 29, 1989.

Sparks, Dix, Enoch, Suthers & Winslow, R. Kenneth Sparks and Robert M. Willson, Colorado Springs, for plaintiffs-appellants.

Evans & Briggs, G. Scott Briggs, Colorado Springs, for defendant-appellant Castle Concrete Co.

Hecox, Tolley, Keene & Beltz, John W. Sabo, III and Cynthia Mace Dude, Colorado Springs, for defendant-appellee Colorado Nat. Bank–Exchange.

Wells & Larimer, Louie Larimer, Colorado Springs, for defendant-appellee Duston Const. and Jack Duston.

C. David McDermott, Colorado Springs, for defendant-appellee Colorado Springs Supply Co.

Richard K. Rufner, Denver, for defendants-appellees Douglas E. Fast and Mary M. Fast and Remad Development, Inc.

FISCHBACH, Judge.

Schmidt Construction Company, Adarand Constructors, Inc., and Castle Concrete Company (plaintiffs) appeal the trial court's

denial of their claims for liens on subdivision property now owned by the Colorado National Bank–Exchange (Bank). We affirm.

Plaintiffs' lien claims arise from their work in improving a road, Astrozon Boulevard, pursuant to contracts with the bank's predecessor in interest, Douglas Fast, or his agent or contractor. Fast was required to improve the road by the City of Colorado Springs (City) in order to secure subdivision authorization. The section of road in question was neither within nor adjacent to the subdivision, but rather an extension of the roadway abutting the subdivision.

Fast failed to pay plaintiffs for their work on the extension, so they filed liens against the subdivision property, since, by then, the City owned the property on which the extension was constructed. The trial court denied plaintiffs' claims, concluding that a strict construction of the Mechanics' Lien Act and applicable precedent allow the imposition of a lien only on property upon which the labor, services, or provision of material giving rise to the lien occurred.

Plaintiffs contend that the special circumstances of the subdivision setting allow the liens and, therefore, that the trial court's denial of their claims was error. We disagree.

The pertinent section of the General Mechanics' Lien Act provides as follows:

> "All persons of every class performing labor upon ... any building, mill, bridge, ditch ... wagon road, tramway, or any other structure or improvement on land, including adjacent curb, gutter, and sidewalk ... shall have a lien upon the property upon which they have ... bestowed labor or for which they have furnished materials ... machinery or other fixtures, whether at the instance of the owner, or of any other person acting by his authority or under him, as agent, contractor, or otherwise...."

Section 38–22–101(1), C.R.S. (1982 Repl.Vol. 16A).

■ The statute is to be liberally construed as to its remedial portion, but must be strictly construed in determining the question whether the right to a lien exists.

*Bushman Construction Co. v. Air Force Academy Housing, Inc.*, 327 F.2d 481 (10th Cir.1964) (applying Colorado law); *Lindemann v. Belden Consolidated Mining & Milling Co.*, 16 Colo.App. 342, 65 P. 403 (1901).

■ The plain language of the statute authorizes a lien in favor of the laborers or materialmen "upon the property upon which they have ... bestowed labor or for which they have furnished materials or ... machinery or other fixtures...." It does not authorize a lien upon property other than that upon which the services were rendered or for which the fixtures were supplied.

Our supreme court relied on this plain language in *Brannan Sand & Gravel Co. v. Santa Fe Land & Improvement Co.*, 138 Colo. 314, 332 P.2d 892 (1958). In *Brannan*, money was owed for pavement traversing three separate properties: a city right of way, the defendant's property, and property of another private landowner. The defendant, who had contracted and agreed to pay for the entire job, did not pay. The court held that a lien could be claimed on defendant's property only to the extent of the cost of the paving upon it, not to the extent of the entire amount owed. The court found that the express words of the statute, "containing ... no ambiguity," established two limitations on the subcontractor's right to a lien. "First, it is granted only upon the property upon which the labor, services, and material are bestowed or rendered; second, only to the extent of the value of the labor, services and material rendered upon the property." (emphasis omitted)

Plaintiffs argue that *Brannan* is distinguishable because it did not involve a subdivision. Citing *Hess Flume Co. v. La Junta Suburban Land Co.*, 63 Colo. 236, 166 P. 246 (1917) and *Woodcrest Homes, Inc. v. First National Bank*, 15 B.R. 886 (Bankr.D.Colo.1981), plaintiffs assert that a subdivision must be treated as a whole and, as such, should be lienable for any improvements "essential to the whole" regardless of whether the improvements are physical-

ly upon the property. Because the very existence of the subdivision depended on meeting the City's requirement of completing the road, the plaintiffs contend that their work was essential to the whole and thus supportive of a lien. We disagree.

We conclude, first of all, that insofar as the road extension was not for the direct benefit of the land upon which the lien was asserted, the rationale of *Hess Flume* is inapplicable here.

Second, even if we assume, without deciding, that the "entity" nature of subdivisions may justify treating individual lots together as a unit and may thus allow a lien on all lots for improvements within the entire subdivision, that fact does not justify a departure from *Brannan* and the plain language of the statute to include improvements outside the subdivision's borders. Development of any property, whether or not classified as a subdivision, may require work on public land or on easements through other private property. The "entity" nature of subdivisions is not special or unique in this regard.

Moreover, the road extension at issue here, unlike the sewers at issue in *Woodcrest,* was not "essential to the beneficial use of the lots." The lots were accessible from another direction, and some of the improvements required by the city were not even on Astrozon Boulevard. The guardrails, for example, were on a perpendicular city thoroughfare. Thus, the trial court properly concluded that plaintiffs' work, although of incidental benefit to the subdivision, was primarily for the benefit of the public at large.

Improvements required by an arm of government for the benefit of the public are not lienable to private land absent an express declaration by the General Assembly. *See Fleming v. Prudential Insurance Co.,* 19 Colo.App. 126, 73 P. 752 (1903) (private property was found not lienable for the construction of adjacent sidewalks).

Furthermore, we note that in 1965, after both *Brannan* and *Fleming* were decided, the General Assembly amended the statute to allow liens to be imposed on land for adjacent sidewalks, curbs, and gutters. The amendment did not include language permitting liens for off-site work on adjacent or nearby roadways. By amending the statute in this limited fashion, the General Assembly, presumably cognizant of the decisions in both *Brannan* and *Fleming,* must have intended that such off-site work continue to be excluded. *See People v. Mathes,* 703 P.2d 608 (Colo.1985); *Music City, Inc. v. Estate of Duncan,* 185 Colo. 245, 523 P.2d 983 (1974) (if statutory provision settled by judicial construction is unchanged when statute is amended, then it is presumed that the General Assembly agreed with that construction).

Judgment affirmed.

METZGER and NEY, JJ., concur.